**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

Case No.: [_____]

Dongkyu Kim (DK),

*Plaintiff*,

v.

State of New Jersey;

Bergen County Superior Court, Family Part;

Bergen County Prosecutor's Office;

Anny Scardino (Director of Risk Management, Bergen County);

Anthony Scardino (Assistant Professor, Felician University);

Gordon Tocco (Employee, Indiana Department of Child Services);

Elizabeth Tocco (Admissions Advisor, Felician University);

Svitlana Kosturko;

Tim Kosturko;

Andrew Ritenour;

Nick Ritenour;

Dr. Daniel Hakimi;

PA Shira Wein;

Felician University;

Indiana Department of Child Services;

Ob/Gyn & Infertility Services of Northern NJ, LLC;

Michael Tocco;

Honorable Jaclyn V. Medina, J.S.C.;

and John Does 1-10 (unknown members of the trafficking network)

*Defendants*.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, TRAFFICKING VICTIMS PROTECTION ACT (18 U.S.C. § 1595), RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1964), AND SUPPLEMENTAL STATE CLAIMS**

**Jury Trial Demanded**

Plaintiff Dongkyu Kim (DK Kim), proceeding pro se, files this Complaint against the above-named Defendants for violations of his civil rights under color of law, pursuant to 42 U.S.C. § 1983; civil remedies under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595; the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964; and supplemental state law claims. This action arises from a multi-state conspiracy to traffic Plaintiff's biological child through the abuse of surrogacy laws, fraud on the court via a false abortion claim, and deprivation of parental rights without due process.

## I. INTRODUCTION

1. This case involves a sophisticated inter- & intra-state human and child trafficking scheme exploiting gaps in New York's ban on commercial surrogacy (N.Y. Dom. Rel. Law § 123) and New Jersey's marriage-dependent surrogacy enforceability (N.J. Stat. Ann. § 9:17-65). Defendants, including state actors, their extended family network, medical professionals, university officials, and private individuals, conspired to deceive Plaintiff, extract his genetic material under false pretenses ("unvaccinated sperm/DNA extraction"), and transfer the resulting child (Name: Unknown; "Blue & Gold Confetti") from New Jersey to Unknown family in Indiana or New Jersey without Plaintiff's knowledge or consent.

2. Plaintiff, a naturalized U.S. citizen and dedicated insurance broker/underwriter in New York since 2014 (Government-assigned Essential Worker during the Covid-19 pandemic, managed Corporate Property & Casualty Insurance programs for major U.S.-Korean conglomerate clients and S&P 500's Financial Institution D&O, Professional Errors & Omissions, Fiduciary Liability, Employee Theft and Kidnap & Ransom Insurance programs), was denied a fair hearing in New Jersey Family court, where his paternity action (Docket No. FD-02-323-25) was fraudulently dismissed with prejudice on October 9, 2024, based on dubious evidence of a prohibited 25-

week abortion. The scheme systematically targeted Plaintiff as a vulnerable donor and as an unwed father, using social media (Facebook/Instagram/TikTok/Telegram) as a "Strategic Cyber Nexus" for social engineering, communication, recruitment, grooming, and enforcement.

3. Prior to this filing, Plaintiff reported the matter to the New York State Office of the Attorney General (File No. 24-042942), which reviewed it on July 30, 2024, but dismissed it as a "family matter" not amenable to their assistance, urging contact with local police or private counsel. No responses from New Jersey Attorney General (reported on August 1, 2024). An Indiana Attorney General complaint (#1170602) was filed and acknowledged in August, 2024, later referred to the FBI Indianapolis in May, 2025. Despite these multi-state administrative exhaustion, federal intervention is required due to the involvement of state actors and interstate commerce and child endangerment. This scheme parallels the 2025 Arcadia Surrogacy fraud (Mark Surrogacy Investment LLC), where a California couple deceived multiple surrogates, leading to 21 children in protective custody and FBI involvement—highlighting systemic risks & failure in the unregulated industry exploited here.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) for claims under 42 U.S.C. § 1983, 18 U.S.C. §§ 1595 and 1964; 28 U.S.C. § 1343(a)(3) (civil rights); and 28 U.S.C. § 1367 (supplemental jurisdiction for state claims) as they form part of the same case or controversy.

5. Personal jurisdiction exists over all Defendants, as the scheme involved acts in New York (social engineering, conception, planning, recruitment), harmed a New York resident's reputation and affected a New York resident. Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events occurred in this District: Plaintiff's residence, child's conception in New York City apartment, the planned marriage in New York City Marriage Bureau, all of which are central to the conspiracy and deprivation of parental rights. These New York events underscore the interstate nature of the scheme, which exploited gaps in surrogacy laws – New York's outright ban on commercial surrogacy to prevent commodification of children and "black market" baby

sales, as discussed in Kimberly M. Mutcherson, "Stateless Babies & Adoption Scams: A Bioethical Analysis of International Commercial Surrogacy," Berkeley Journal of International Law, Vol. 30:2 (2012)—and New Jersey's statutes limiting surrogacy enforceability without marriage, as analyzed in Margaret F. Brinig, "Property Rights in Children," Notre Dame Law Review, Vol. 95:4 (2020), which highlights risks for unwed parties like Plaintiff. The recent Arcadia surrogacy scandal in California, where a couple was investigated for abusing 21 surrogate-born children in a scheme involving deception and neglect, illustrates how such networks, often involving state employees and family ties, are positioned to facilitate trafficking across states, mirroring the Defendants' operations here.

## II. PARTIES

6. Plaintiff Dongkyu Kim (DK Kim) is a resident and U.S. citizen of New York City, New York County, New York. He is the biological father of the child at issue, conceived on December 30-31, 2023, and born approximately between September 19 – October 2, 2024 (Name: Unknown, most likely a son; nicknamed "Blue & Gold Confetti"). Plaintiff is a Korean American, born May 30, 1991, in Seoul, Korea; raised by grandparents after his parents' divorce; lived in Canada from 2006-2010; and has resided in New York City since 2010. He works as an insurance underwriter for a major Corporate Property & Casualty Insurance company in New York, NY. And he is the founder of a small InsurTech project. He is a stable figure, who has been victimized through a surrogacy/unwed father scheme involving social-engineering, fraud, trafficking and state-enabled deprivation of parental rights.

7. Defendant State of New Jersey is a sovereign entity whose agencies and officials enabled the violations under color of law.

8. Defendant Bergen County Superior Court, Family Part is a New Jersey court that dismissed Plaintiff's paternity suit without fair hearing, based on fraudulent evidence.

9. Defendant Bergen County Prosecutor's Office is a New Jersey entity that failed to act & to investigate crimes, enabling violations, despite direct communications with a detective regarding suspicions of premature birth,

trafficking, and evidence like baby photos and vehicle details (e.g., blue shades added suggesting child transport).

10. Defendant Anny Scardino is the Director of Risk Management for Bergen County, New Jersey, and a family member to a Professor at Felician University, suspected of facilitating the network, linked through Instagram connections to Alina Ogoltsova during her 2024 pregnancy.

11. Defendant Anthony Scardino is a Professor at Felician University in New Jersey, a family member to an employee at Bergen County, New Jersey, suspected of receiving or facilitating placement of Plaintiff's child through university ties.

12. Defendant Gordon Tocco is an Employee/Special Investigator at the Indiana Department of Child Services (DCS), residing in Indiana, using his position to facilitate interstate child transfers.

13. Defendant Elizabeth Tocco is an Admissions Advisor at Felician University in New Jersey, Alina's Admissions Advisor, and part of the adoptive network, daughter-in-law to Gordon Tocco; she posted publicly on April 13, 2024, about a baby "arriving" early October using adoption-like language ("Coming in," "Joining Us"), named "Olivia Catherine" by her father-in-law, and blocked Plaintiff on social media despite no prior interaction; Ball State University alumni.

14. Defendant Svitlana Kosturko is Alina's mother, residing in New Jersey, involved in coercing Alina and facilitating the scheme, including abusive responses during Plaintiff's support (e.g. groceries sent April-May 2024) and threat of abortion, and threatening to send the baby to Ukraine-Russia War Frontline.

15. Defendant Tim Kosturko is Alina's stepfather or associate, residing in New Jersey, aiding the conspiracy.

16. Defendant Andrew Ritenour is a Wood-Ridge, New Jersey resident and participant in the network, a family member to Toccos, neighbour to Alina Ogoltsova and Svitlana Kosturko, involved in prior child adoption in 2022; former Disney employee, tying to Alina's March 8, 2024, Disney Orlando trip

one week before the planned marriage ceremony in New York City Marriage Bureau.

17. Defendant Nick Ritenour is a Wood-Ridge, New Jersey resident and participant in the network, a family member to Toccos, neighbour to Alina Ogoltsova and Svitlana Kosturko, involved in prior child adoption in 2022; Ball State University alumni.

18. Defendant Dr. Daniel Hakimi is an OBGYN in Clifton, New Jersey, who provided, who provided Carrier Screening/Genetic testing for both Plaintiff and Alina Ogoltsova, and potentially falsified and omitted partners medical records; Alina has been seeing him since 2019, and on March 6, 2024, unusually sampled Plaintiff's blood for a "husband".

19. Defendant PA Shira Wein is a physician assistant associated with Hakimi's practice, involved in medical fraud; potentially falsified and omitted partners medical records.

20. Defendant Felician University is a New Jersey institution employing Elizabeth Tocco, Anthony Scardino, enabling the network and the scheme; Alina Ogoltsova was allegedly admitted as s Psychology major (initially Nursing) in early 2025, after the reference letter Plaintiff wrote on January 6, 2024.

21. Defendant Indiana Department of Child Services is a state agency that employs Gordon Tocco, enabling the network that facilitated illegal adoptions under color of law.

22. Defendant Ob/Gyn & Infertility Services of Northern NJ, LLC is Hakimi's practice, liable for his and Wein's actions.

23. Defendant Michael Tocco is Elizabeth's husband, residing in Indiana, son of Gordon Tocco, involved in the network and the scheme; Alina's BSN Admission Advisor's husband, who received a baby in October, 2024.

24. Defendant Michael Tocco is Elizabeth's husband, residing in New Jersey or Indiana, involved in recent child acquisitions.

25. Defendant Honorable Jaclyn V. Medina, J.S.C., is a New Jersey Superior Court judge who dismissed Plaintiff's paternity suit without a fair hearing on October 9, 2024, relying on in-camera review of unverified documents (sued in official capacity for injunctive relief only).

26. Defendants John Does 1-10 are unidentified individuals or entities involved in the conspiracy.

**Critical & Vulnerable Witness**: Alina Ogoltsova is a resident of Wood-Ridge, New Jersey, the mother of my child, and a central participant in the conspiracy. She was being hired to be a Surrogate. In New Jersey, Surrogates requires One prior Birth. She was being coerced and forced to not tell the truth at the Paternity Court hearing. Alina Ogoltsova's and my child could be potentially in danger, if criminality is proven. As a recent Ukrainian immigrant, she was exploited by the network for surrogacy, with her prior child (2022) placed with Ritenours. Alina Ogoltsova has been going to her OBGYN Dr. Hakimi since 2019. Key events include: initial online meeting in September 2023, discussing father's role and Bachelor of Science in Nursing; reconnection in November 2023; first in-person meeting December 9, 2023; conception on December 30-31, 2023, in NYC; rushed ring purchase and marriage scheduling in early 2024; pregnancy confirmation on February 4, 2024; marriage license appointment on February 16, 2024 (Manhattan City Clerk); Disney trip on March 8, 2024; gender reveal (Blue & Gold confetti) post-trip in NYC; breakup over prenup agreement in March 2024 with financial and abortion threats; abusive mails on April 4, 2024 (e.g., "useless, stingy piece of shit," threats to block and deny child access); TRO filing July 5, 2024 (claiming 25-week pregnancy), dismissed July 16, 2024; alleged abortion July 12, 2024, without notice during TRO; recent discussions of surrogacy and vehicle changes (blue shades added October 2, 2024, suggesting transport).

### III. STATEMENT OF FACTS

- **November – December 2023:** Plaintiff Dongkyu Kim (DK), a dedicated resident & an ambitious entrepreneur of New York City since 2014, entered into a sincere and loving relationship with Alina Ogoltsova in late 2023. Most

of their time together was spent in New York City, where their deep connection blossomed. Alina Ogoltsova inquired about the "role of the father" frequently and discussed her aspiration of achieving the Accelerated Bachler School in Nursing degree at Felician University. It was in Plaintiff's New York City apartment at 453 FDR Drive, #C1703, New York, NY 10002, that their child, affectionately nicknamed "Blue & Gold Confetti" and expected to be half-Ukrainian and half-Korean, was conceived on or about December 30-31, 2023. This intimate moment in New York marks the true beginning of this tragedy, as Alina Ogoltsova rushed Plaintiff to buy rings and schedule a marriage ceremony. (Exhibit A: Timeline of Dongkyu Kim vs. Alina Ogoltsova, 72-page PDF, detailing the full chronology from the initial meeting to post-birth events, updated August 8, 2024).

- **January-February 2024:** On January 6, as per Alina Ogoltsova's request, Plaintiff wrote a reference letter for Alina to Defendant Elizabeth Tocco (Felician University Admissions Advisor). Filled with hope for a shared future, Plaintiff and Alina scheduled an in-person marriage license appointment for February 16, 2024, at the Manhattan City Clerk's Office (141 Worth Street, New York, NY 10013), which we both attended in-person (Exhibit B. Marriage License Appointment, 2-page PDF, dated February 8, 2024). Alina expressed a desire for Plaintiff to move to New Jersey post-marriage, citing the convenience for her commute to Felician University, and relying on Plaintiff's promise to support her education—a commitment made with genuine love and trust. However, when Plaintiff, in a moment of prudent caution, insisted on a prenuptial agreement to protect their future, the relationship suddenly unraveled. This prenup demand was conveniently leveraged by the Defendants to sabotage the union, ensuring we remained unwed and paving the way for their illegal surrogacy and adoption scheme. Without marriage, the surrogacy contract became unenforceable under New Jersey law, as noted in Margaret F. Brinig's "Property Rights in Children," Notre Dame Law Review, Vol. 95:4 (2020), which explains how NJ statutes require marital status for validity, leaving unwed parties like Plaintiff vulnerable to exploitation.

- **March 2024:** On March 6, Alina Ogoltsova took Plaintiff to Defendant Dr. Daniel Hakimi's office (Ob/Gyn Infertility Services of Northern NJ, LLC) for a Carrier Screening Test (Exhibit C: Carrier Screening Report, 6-page PDF, showing Negative for 254 out of 254 diseases), sampling Plaintiff's blood

unusually for a "husband". Alina Ogoltsova had already taken her Carrier Screening Test in February, 2024, without Plaintiff's presence. Plaintiff was greeted by Dr. Daniel Hakimi: "Congratulations, you've got quite a catch", Doctor said. Ogoltsova traveled to Disney Orlando (March 8) and this ties to Defendant Andrew Ritenour (former Disney employee, in-law to Tocco and Wood-Ridge neighbour to Ogoltsova). Post-trip gender reveal (Blue & Gold Confetti, occurred in New York; breakup ensued over prenup discussions, Alina Ogoltsova yelling at Plaintiff during the gender reveal – "I will treat this like business" with threats of financial pressure and potential abortion.

- **April – May 2024:** Silence from Ogoltsova despite Plaintiff's support (groceries). Public Facebook/Instagram posts by Elizabeth Tocco (April 13), who was linked to Ogoltsova on Instagram, announced a baby "arriving" early October, using adoption-like language; her father-in-law Gordon Tocco named her "Olivia Catherine." (Exhibit A: Please refer to page 27~30) Elizabeth Tocco blocked Plaintiff on social media despite of no prior interaction, which indicates communication between Ogoltsova in New Jersey and Toccos in Indiana.

- **June – July 2024:** Plaintiff sought confirmations on due date, hospital, gender from his ex-fiancé; Ogoltsova threatened abortion. On July 5, she filed a Temporary Restraining Order (TRO) in Wood-Ridge, NJ at 12AM, to silence inquiries (claiming 7-months pregnancy with the Plaintiff's child, as evidenced on the TRO (Exhibit D: TRO Ogoltsova vs Kim, 12-page PDF, "Plaintiff [Ogoltsova] is 7 months pregnant with defendants child"); TRO voluntarily dismissed by Ogoltsova on July 16. During TRO (prohibiting contact), Ogoltsova allegedly aborted on July 12 without notice.

- **August-September 2024:** Connections emerged: Ogoltsova's Wood-Ridge, NJ neighbors (Ritenours, Distance: 11-min walk or 2min drive; intimate proximity; easy access for pressure; adoptive hold with 2022 child – See Exhibit A: Please refer to page 60) are Toccos' in-laws; Anny Scardino (Bergen Risk Management; a family member to Anthony Scardino: Felician Professor) linked via Instagram to Ogoltsova. Plaintiff reported to NY/NJ/IN Attorneys General; IN AG referred to FBI in May 2025, NJ to Division of Criminal Justice (interview originally scheduled & canceled at Trenton location in May, 2025). Emails to Bergen County Prosecutor's Office - Detective Negron (Aug.-Oct. 2024; Exhibit E: Email Communication with NJ

BCPO Detective Wendy Negron, 8-page pdf) detailed suspicions, shared baby photos believed to depict Ogoltsova's child, and noted Tocco posts implying live birth or an adoption ("Olivia around the corner"). Plaintiff requested written responses or statements from Bergen County Prosecutor's Office. Plaintiff did not and has not received any written response or statements, still as of today, 10/6/2025.

- **September 20, 2024 Virtual Zoom Hearing**: In emergent application (Docket No. FD-02-323-25), Ogoltsova claimed termination without proof, while sitting in the driver's seat of her vehicle, covering her lower body and stomach with Auto Vehicle parts; court noted TRO's pregnancy assertion, set Oct. 9 return for medical documentation (reviewed in camera), but no evidentiary hearing for cross-examination, not independently & third party verified.

- **On October 1, 2025 at 11:00 AM, Private Investigator's report** states that "Alina's vehicle pulled into the left side of the driveway. As Alina left the vehicle she was carrying a large bag, in her arms covering the front portion of her body, as she walked and entered the front door of her residence. (See Exhibit F: PI Investigative Report, please refer to page 4/10)

- **On October 2, 2025, at 11:30 AM, Private Investigator's additional surveillance** in Carlstadt/Wood-Ridge captured Alina Ogoltsova taking out trash, appearing further post-partum with a body shape () consistent with recent childbirth and recovery, reinforcing the live birth and ongoing concealment. (See Exhibit F: PI Investigative Report, including Exhibit G-1, G-2: Timestamped JPG Image Files of showing Alina Ogoltsova in front of her gray Hyundai vehicle, plate X31-RFA, in patterned PJs and headscarf, loading a blue recycling bin; Videographic Evidence from Private Investigator Available upon Request; Witness Available – Private Investigator David V. licensed).

- **October 9, 2024 In-Person Hearing:** Ogoltsova submitted unverified letters from OBGYN and clinic claiming July 12 chemical abortion; court dismissed with prejudice without fair hearing, authenticity challenge, or consideration of Plaintiff's evidence (e.g., BCPO-Negron communications, Tocco posts, Private Investigator's photos of blue-curtained vehicle suggesting child transport). Child allegedly transferred to Indiana (Tocco/DCS

involvement) or New Jersey (Scardino involvement). Shortly after, Michael Tocco posted a photo of a newborn baby (October 2024) on Facebook, announced as a family addition, but the child appears fully Caucasian, not matching Plaintiff's half-Korean heritage. (See Exhibit H: Compressed ZIP file; Tocco Family Facebook Posts; various screenshots of newborn in hospital, family announcements, and group photos showing pattern of child acquisitions; Alina Ogoltsova's TikTok repost interaction with the Surrogacy post).

- o  Given the mismatch, Plaintiff believes his child was trafficked to another network member (e.g., Anthony/Anny Scardino or Ritenours) in New Jersey or elsewhere, facilitated by Felician connections, DCS access (via Gordon Tocco), and medical fraud & errors and omissions (via Hakimi/Wein).

- **2025 Updates:** Ogoltsova admitted to Felician as Psychology major, initially Nursing; Plaintiff with a heavy heart and a deep sense of responsibility, as he bear the profound responsibility to protect his missing child and pursue justice; Plaintiff further referrals to NJDCF, DHS, NCMEC, Texas AG, and Alina Habba (NJ DA) (See Exhibit I: Letter to US Attorney Alina Habba, 2-page, PDF letter sent on September 5, 2025).

The scheme abused New Jersey surrogacy laws (requiring prior child; Ogoltsova qualified post-2022 adoption to Ritenours) and HIPAA to conceal trafficking. Social media platforms (Facebook, Instagram, TikTok, Telegram) served as the hub for grooming via false relationship and "unvaccinated sperm" pretext. State actors (courts, prosecutors, DCS) systemically failed to investigate, enabling the enterprise via fraud on the court, under the color of law. This conspiracy deprived Plaintiff of parental rights without due process, equal protection, and violated federal anti-trafficking laws. Prior referrals to authorities (e.g., New Jersey Bergen County Prosecutor's Office, New Jersey Attorney General) were either ignored or determined civil; leaving the Plaintiff with no viable legal recourse. This further symbolizes systematic risk and failure, to prove the Surrogacy network or the illegal adoption scheme.

Virtual Zoom hearing (September 9, 2024) & In-Person Court hearing (October 9, 2024) Transcripts for New Jersey Family Court are available & included in Exhibit

N and Exhibit O. Plaintiff requested Transcripts in October, 2024 and received them in February, 2025 via his previous attorney, Stephanie Palo.

## IV. CAUSES OF ACTION

**Count 1: Violation of 42 U.S.C. § 1983 (Fourteenth Amendment Due Process – Parental Rights)**

27. Defendants, acting under color of New Jersey and Indiana state law, deprived Plaintiff of protected liberty interest in his child without due process by relying on fraudulent evidence, dismissing his Paternity suit without fair hearing to challenge fraudulent abortion evidence; failure to act and to investigate, violating Lehr v. Robertson, 463 U.S. 248 (1983), and equal protection under NJ surrogacy laws (Notre Dame Review, supra). Post-partum October > July termination impossible, alongside Oct 2 PI shots. Arcadia case shows similar state-enabled fraud in surrogacy dismissals. Triggers "extrinsic fraud" exception to finality (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)).

**Count 2: Violation of 18 U.S.C. § 1595 (TVPA – Civil Remedy for Trafficking)**

28. Defendants coerced Alina Ogoltsova into pregnancy, faked abortion, trafficked Plaintiff and her child via force/fraud/coercion (18 U.S.C. § 1591) for financial/relational gain & an admission to Felician University after sabotaging the marriage, while using surrogacy as a legal vehicle. This caused Plaintiff harm as a victim (parental loss). Plaintiff seeks damages as a victim.

**Count 3: Violation of 18 U.S.C. § 1964 (Civil RICO)**

29. Defendants formed an enterprise affecting interstate commerce & transport, engaging in a pattern of racketeering (trafficking multiple children, e.g. Alina Ogoltsova's 2022 child to Ritenours, social-engineering & communication fraud via social media), exploiting New Jersey Surrogacy laws. Predicate acts include false representations and child transfer and abusing their positions of power to exploit vulnerable U.S. immigrants. Toccos & Ritenours as "enterprise" (Felician University Admission Advisor + Indiana DCS + Wood-Ridge, NJ neighbours; Distance: 11-min walk or 2min drive; intimate proximity; easy access for pressure; adoptive hold with 2022 child) with predicates (fraud via fake medical records; mail fraud if adoption papers forged). Multiple kids shows continuity; Arcadia

demonstrates state family networks' role in patterns. The October 3 photo supports the cover-up predicate, qualifying under Sedima v. Imrex Co., 473 U.S. 479 (1985), with state employees' positions facilitating operations as in Arcadia.

**Count 4: Supplemental State Claims (Fraud, Negligence, Intentional Infliction of Emotional Distress)**

30. Defendants' actions violate NY/NJ tort laws, committed fraud (fake medical records), conspired to interfere with parental rights post-prenup demand, and caused severe mental & emotional distress, pendent to federal claims.

**VI. PRAYER FOR RELIEF**

Wherefore, Plaintiff demands:

a. Declaratory judgment that Defendants violated his rights and declare the New Jersey dismissal unconstitutional and void, seeking relief under exceptions analogous to Rule 60(b) of the Federal Rules of Civil Procedure for fraud, mistake, or misconduct (limited circumstances to correct the order without re-litigation);

b. Injunctive relief: Order federal investigation into child's location; if alive, DNA testing, subpoenas for records, adoption, surrogacy records from Moskowitz Law Group (Hackensack, NJ) and NJ Bergen Surrogate's Court; protect Critical & Vulnerable Witness Alina Ogoltsova and child from potential danger;

c. Compensatory damages ($_____); as the Court deems just

d. Punitive damages ($_____); reputational harm from false TRO; as the Court deems just

e. Treble damages under TVPA/RICO; as the Court deems just

f. Attorney's fees/costs (pro se recoverable);

g. Jury trial;

h. Enjoin Defendants from further abuse of New Jersey surrogacy laws or Indiana DCS interference; order further investigation into the trafficking network; other relief the Court deems just, including costs and fees.

i. Provide an opportunity for Plaintiff to be a father of his offspring.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

## VERIFICATION

I, Dongkyu Kim (DK), declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on October 6, 2025

Dated October 6, 2025

Dongkyu Kim (DK), Pro Se

453 FDR Drive, #C1703

New York, NY 10002

201-888-7110

dknywillis@gmail.com (mailto: dknywillis@gmail.com)

Enclosures:

Exhibits A-O (as described).

- Exhibit A: Timeline of Dongkyu Kim & Alina Ogoltsova. - August 8, 2024
- Exhibit B: NYC Marriage License Appointment DK, Alina - February 8, 2024
- Exhibit C: Carrier Screening Test Genetics Results Dongkyu Kim - March 6, 2024
- Exhibit D: TRO Filing - Ogoltsova v Kim - July 6, 2024
- Exhibit E: Email Communication with NJ BCPO Detective Wendy Negron – August to October, 2024
- Exhibit F. PI Investigative Report - Eagle Eye – September to October, 2024
- Exhibit G-1. Image JPG file #1: Alina Ogoltsova In front of her car NJ on October 2, 2024
- Exhibit G-2. Image JPG file #2: Alina Ogoltsova In front of her car NJ on October 2, 2024
- Exhibit H. Compressed Zip File of various photographic evidence.
- Exhibit I. Referral Letter to US Attn Alina Habba – September 5, 2025
- Exhibit J. NY Ban all surrogacy – Berkeley Journal of International Law, Vol 30, Iss. 2 92021, Art.4 2012, page 425
- Exhibit K. NJ Surrogacy Statue without marriage – Berkeley Journal of International Law, Vol. 30, page 428
- Exhibit L. Notre Dame Review – Surrogacy (Vol 95:4, page 1630)
- Exhibit M. Seema Mohapatra, Stateless Babies & Adoption Scams: A Bioethical Analysis of International Commercial Surrogacy, 30 Berkeley J. Int'l Law. 412 (2012), full 40-page PDF.
- Exhibit N. Sept 20, 2024 virtual hearing Transcript – New Jersey Family Court, Requested in October, 2024 & Received in February, 2025.
- Exhibit O. Oct 9th, 2024 in-person court Transcript – New Jersey Family Court, Requested in October, 2024 & Received in February, 2025.